UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BANKNORTH, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 05-cv-0021-P-S |
| ) | |
| BJ'S WHOLESALE CLUB, INC. et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

**ORDER ON BJ'S WHOLESALE CLUB'S MOTION TO DISMISS AND FIFTH THIRD BANK'S MOTION TO DISMISS**

SINGAL, Chief District Judge

Before the Court are Motions to Dismiss by BJ's Wholesale Club (Docket # 6) and Fifth Third Bank (Docket # 8). The issue presented is whether Plaintiff Banknorth, N.A. ("Banknorth"), an issuer of credit cards, may recover from Defendants in contract, tort, and equitable subrogation for Defendant BJ's Wholesale Club's ("BJ's") alleged improper storing of customers' credit card numbers in its computers, which, in turn, led to the theft of those credit card numbers. Defendants BJ's and Fifth Third Bank ("Fifth Third") have moved to dismiss Bankrorth's claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court DENIES Defendants' Motions to Dismiss.

**I. BACKGROUND**

In accordance with the standard for a motion to dismiss, the Court accepts as true Plaintiff's well-pleaded factual averments and draws "all inferences reasonably

extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991).

The parties to this case represent three types of participants in credit card networks: Plaintiff Banknorth is an "issuing bank," which issues credit and debit cards to customers and maintains a contract with cardholders for repayment; Defendant BJ's is a "merchant," which sells goods or services and is authorized to accept credit and debit cards for payment; and Defendant Fifth Third is an "acquiring bank," which helps the merchant fulfill card payments from customers by providing authorization for card transactions, crediting the merchant's account, and then submitting the transaction to the issuing bank for settlement. In the typical transaction, the issuing bank pays the acquiring bank for the amount of the purchase, posts the transaction to the cardholder's account, and sends a monthly statement to the cardholder to collect payment.

Plaintiff Banknorth is an issuer of Visa debit cards. Defendant BJ's, a retailer that sells consumer goods to its members, is authorized to accept Visa credit and debit cards as payment. Defendant Fifth Third is the acquiring bank for BJ's. Both Defendant BJ's and Defendant Fifth Third (as well as Plaintiff Banknorth) are subject to extensive regulations issued by Visa (the "Visa Operating Regulations"). Among their many provisions, the regulations include provisions designed to protect the security of cardholder information. The regulations also require acquiring banks to ensure merchant compliance with the Visa Operating Regulations.

Banknorth alleges that between July 1, 2003 and February 29, 2004, Defendant BJ's retained customers' credit card numbers when they made credit card purchases at BJ's stores. Merchants are not permitted to store or retain credit card numbers under the

2

Visa Operating Regulations.  Furthermore, due to BJ's failure to protect and secure the Visa card magnetic stripe information that it retained, unauthorized third parties were able to access Visa debit card magnetic stripe information belonging to BankNorth cardholders and use that information for fraudulent purposes.

Banknorth essentially brings three claims: Counts I and II allege breach of contract against Fifth Third and BJ's respectively.  Counts III and IV allege negligence.  Counts V and VI allege equitable subrogation against BJ's and Fifth Third respectively.  Plaintiff seeks damages for refunds it made to cardholders for fraudulent purchases and for the costs of reissuing cards to its cardholders.

## II. DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Nicolaci v. Anapol, 387 F.3d 21, 24 (1st Cir. 2004).  In addition, the Court may consider the contract between BJ's and Fifth Third included in BJ's Motion to Dismiss (Bank Card Merchant Agreement (Docket # 6, Attach. 4–5)) and the contract between Fifth Third and Visa included in Fifth Third's Motion to Dismiss (Docket # 8, Attach. 2).  See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996) ("[A] court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.").

Defendants move to dismiss all of Plaintiff's claims as failing to state a claim upon which relief can be granted. Specifically, Defendants argue for dismissal of Plaintiff's breach of contract claiming Plaintiff is not an intended third party beneficiary of any of the contracts allegedly breached by Defendants. Defendants argue that Plaintiff's negligence claims fail because Defendants owe no duty of care to Plaintiff and, furthermore, recovery is barred under the economic loss doctrine. Finally, Defendants argue that Plaintiff's equitable subrogation claims are barred because Plaintiff, not Defendants, is the primary obligor to the defrauded cardholders.

While some of Defendants' arguments may ultimately have merit, they require factual determinations more appropriately made at summary judgment or trial. Therefore, as explained below, the Court DENIES Defendant's Motion to Dismiss.

### A. Breach of Contract.

Plaintiff alleges that it was an intended beneficiary of three separate contracts. According to Plaintiff, each of these contracts were breached by Defendants when they failed to comply with Visa Operating Regulations: (1) a contract between Fifth Third Bank and Visa, (2) a contract between Fifth Third and BJ's, and (3) a contract between BJ's and Visa. Defendants argue that the contracts are clear on their face that Plaintiff was not intended as a beneficiary of the contract.

Both Maine and Ohio[1] follow Section 302 of the Restatement (Second) of Contracts. See Hill v. Sonitrol of Southwestern Ohio, Inc., 521 N.E.2d 780, 784 (Ohio

---

[1] Without fully briefing the choice of law issue, the parties' submissions do suggest that this Court may ultimately need to determine whether Maine or Ohio law applies to this dispute. However, as it relates to this breach of contract claim, it appears that both Maine and Ohio would apply the Restatement (Second) of Contracts.

4

1988); Pejepscot Industrial Park, Inc. v. Maine Central R. Co., 297 F. Supp. 2d 326, 331 (D. Me. 2003). Section 302 provides:

> [A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either:
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302. Thus, in order for Plaintiff to succeed in its claims, it must ultimately prove that the various parties to the contracts intended Plaintiff to be a beneficiary of these agreements. However, for purposes of a motion to dismiss, the Court must take Plaintiff's averments that it is an intended beneficiary of the contracts (see Compl. (Docket # 1) ¶¶ 44, 48, 49) at face value unless those averments are contradicted by the unambiguous language of the contracts that are properly before the court.

In this case, the Court has only been provided with copies of two of the three contracts allegedly at issue. These two contracts do not provide a clear picture of the contractual obligations between the parties. Turning first to the contract between BJ's and Fifth Third, it states that the contract "is not for the benefit of, and may not be enforced by, any third party." (See Bank Card Merchant Agreement (Docket # 6, Attach. 3) ¶ 16.) However, it also states that in the event of a conflict with the Visa Operating Regulations, the Regulations prevail. (Id. ¶ 1.) Since only a small excerpt of the Operating Regulations is in the record, the Court cannot determine whether Defendants, by agreeing to abide by the Operating Regulations, have created a third-party relationship

with Plaintiff that supersedes the contrary language in the Bank Card Merchant Agreement.

The contract between Visa and Fifth Third (or, more precisely, between their respective predecessors in interest) suffers from a similar malady.  However, it does not even have the language of the BJ's/Fifth Third contract disclaiming an intent to benefit third parties.  It merely commits Fifth Third's predecessor in interest to comply with the rules and regulations of Visa's predecessor in interest.  Given the absence from the record of the rules to which Fifth Third's predecessor actually agreed to adhere, it is impossible for the Court to determine as a matter of law whether the contract manifests an intent to benefit Plaintiff as a third party.

Finally, the alleged contract between BJ's and Visa (see Compl. ¶ 28) was not produced by the parties.  BJ's submission of a declaration stating that no such contract exists (see Neppl Decl. (Docket # 6, Attachment 1) ¶ 4) creates a factual dispute clearly outside the scope of a motion to dismiss.

### B. Negligence

Plaintiff alleges that both defendants owed a duty of care to Plaintiff to safeguard cardholder information from thieves.  Plaintiff further alleges that Defendants breached that duty by allowing hackers to obtain cardholder information and thereby damaged Plaintiff.  Defendants respond that Plaintiff's claims are not cognizable in tort because they are for solely economic loss.  Defendants also claim that the Court should not accept Plaintiff's averments that Defendants owed a duty of care to Plaintiff.  The Court rejects both of Defendant's arguments.

The economic loss doctrine "marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care." Fireman's Fund Ins. Co. v. Childs, 52 F. Supp. 2d 139, 141 (D. Me. 1999). Not all states have adopted the economic loss rule, and those that have vary widely in their understanding of the doctrine's scope. While some states apply the economic loss doctrine only in products liability cases or when it is apparent that a plaintiff in privity with the defendant is seeking to circumvent provisions of the contract, see, e.g., Indem. Ins. Co. of North America v. American Aviation, Inc., 891 So. 2d 532, 537 (Fla. 2004); Grynberg v. Agri Tech, Inc., 10 P.3d 1267, 1269 (Colo. 2000), other states apply the doctrine widely, barring all claims in tort that fail to allege either personal injury or property damage. See, e.g., Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124, 128 (Iowa 1984). Still other states appear to view the economic loss doctrine as a proxy for determining whether a defendant owes a special duty to the plaintiff, and undertake a foreseeability analysis in applying the doctrine. See e.g., Aikens v. Debow, 541 S.E.2d 576, 589 (W. Va. 2000); People Express Airlines, Inc. v. Consolidated Rail Corp., 495 A.2d 107, 116 (N.J. 1985).

Although Maine has adopted the economic loss doctrine in products liability cases, see Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, 659 A.2d 267, 270 (Me. 1995), the Law Court has not yet elucidated its reach beyond the realm of products. Another court in this district has inferred from Oceanside that Maine's economic loss doctrine extends to disputes over professional service contracts. Me. Rubber Int'l v. Envtl. Mgmt. Group, Inc., 298 F. Supp. 2d 133, 137–138 (D. Me. 2004).

7

Notably, privity generally still exists between the parties in such disputes. It is not immediately clear in what circumstances Maine's economic loss doctrine might extend to parties not in privity.[2]

However, it appears to the Court that the credit card industry involves a complex web of relationships involving numerous players governed by both individual contracts and exhaustive regulations promulgated by Visa and other card networks. These relationships may well create non-contractual duties between various participants in the system, just as Plaintiff alleges. In addition, this web of relationships may or may not render Plaintiff's negligence claim susceptible to the economic loss doctrine. In short, the arguments made by Defendants with regard to duty and the economic loss doctrine hinge upon issues of fact as to the nature of the relationships between the parties that the Court may not appropriately resolve via a motion to dismiss. Accordingly, Defendant's motion to dismiss Counts III and IV is DENIED.

### C.  Equitable Subrogation

Plaintiff also brings claims against both Defendants on grounds of equitable subrogation. Plaintiff claims that since it repaid its cardholders for fraudulent purchases made possible by the negligence of Defendants, it should be permitted to recover from Defendants in place of the affected cardholders.

According to the Law Court, equitable subrogation is

---

[2] Defendants suggest that Ohio law may govern Plaintiff's negligence claim if the tortious conduct occurred at Fifth Third's headquarters in Ohio. It appears that Ohio courts may take a more expansive view of the economic loss doctrine than Maine's Law Court. See Floor Craft Floor Covering, Inc., v. Parma Community Gen. Hosp. Assn., 560 N.E.2d 206, 208 (1990). However, Defendants do not press their case that Ohio law governs, so the Court need not consider whether Plaintiff has failed to state a claim under Ohio's more severe economic loss doctrine.

8

> the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies or securities. Equitable subrogation arises by operation of law rather than by contract. However, equitable subrogation is not available where a person pays a debt in performance of his own obligation, as that person is the primary obligor.

McCain Foods, Inc. v. Gerard, 489 A.2d 503, 504 (Me. 1985). Furthermore, "[s]ubrogation, itself a creature of equity, must be enforced with due regard for the rights, legal or equitable, of others." United Carolina Bank v. Beesley, 663 A.2d 574, 576 (Me. 1995)

Maine's case law on equitable subrogation reveals that it is a flexible doctrine that depends heavily on the specific facts of each case. Compare McCain Foods, Inc., 498 A.2d at 504 with Nappi v. Nappi Distributors, 691 A.2d 1198, 1199–1200 (Me. 1997). Given this reality, the Court finds that Plaintiff in this case has adequately pleaded equitable subrogation. First, Plaintiff's averment that its members suffered "numerous unauthorized and fraudulent transactions" (Compl. ¶ 42) is sufficient to establish a debt or obligation on the part of cardholders under the liberal pleading standard of Rule 8(a)(2). Plaintiff's averment that it reimbursed its customers for all amounts lost by them as a result of Defendants' conduct (Compl. ¶ 70) establishes that Plaintiff paid the cardholders' debt or obligation.

Defendants protest that Banknorth has not adequately alleged that it is not the primary obligor to repay the cardholders. Banknorth does not dispute that is has a duty under federal law to reimburse cardholders for fraudulent purchases made with its cards. However, the exact contours of Banknorth's contractual and statutory obligations to cardholders are not clear from the pleadings. Nor is it clear at this stage whether Banknorth exceeded the requirements of federal law and its contracts in its

9

reimbursement of cardholders. Banknorth simply avers that it reimbursed its cardholders "in full." (Compl. ¶ 70.) In short, given the fact-specific nature of the equitable subrogation doctrine in Maine, the Court does not believe that it is "apparent beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle [it] to relief." Greene v. Rhode Island, 398 F.3d 45, 48 (1st Cir. 2005). Whether the claim will survive summary judgment remains to be seen.

### III. CONCLUSION

Because Plaintiff has properly stated claims for breach of contract, negligence, and equitable subrogation, the Court DENIES Defendant Fifth Third's Motion to Dismiss (Docket # 6) and Defendant BJ's Motion to Dismiss (Docket # 8).

SO ORDERED.

/s/ George Z. Singal
Chief U.S. District Judge

Dated this 8th day of July, 2005.